UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Vicki Lou Johnson,

      Plaintiff,

      v.                           Civil Action No. 2:13-cv-217

Commissioner of Social Security,

      Defendant.

## OPINION AND ORDER
(Docs. 6, 12)

      Plaintiff Vicki Lou Johnson brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Johnson's motion to reverse the Commissioner's decision (Doc. 6), and the Commissioner's motion to affirm the same (Doc. 12). For the reasons stated below, the Court GRANTS Johnson's motion, DENIES the Commissioner's motion, and REMANDS for further proceedings and a new decision.

## Background

      Johnson was 51years old on her alleged disability onset date of June 30, 2010. She has a high school education and has taken specialized training courses in office management. Her work history consists of working as an at-home daycare provider for approximately nine years, an office manager for an automotive repair company for

approximately eight years, and a registration representative at an emergency department for approximately one year.  (AR 42, 195.)  She is divorced, and has three grown children, two of whom were still living at home with her in February 2012.  (AR 1205.)  The record demonstrates that Johnson has a multitude of medical problems, including but not limited to: neck, shoulder, arm, and elbow pain; lower back pain; left knee pain; left ankle pain; right hand tremors; migraine headaches; a bleeding disorder; hemorrhoids; irritable bowel syndrome; asthma; and coronary artery disease.

In July 2011, Johnson protectively filed applications for supplemental security income and disability insurance benefits.  She alleges that she has been unable to work since June 30, 2010 due to neck pain, back pain, asthma, irritable bowel syndrome, a bleeding disorder, inoperable bleeding hemorrhoids, clinical depression, tremors in her right hand, left ankle pain/swelling, high blood pressure, and headaches.  (AR 171.)  Johnson testified at the administrative hearing that she frequently drops things due to her hand tremors; she has difficulty sitting and standing for long periods; and she experiences pain in her left ankle, left knee, lower back, neck, and shoulders after standing for more than five minutes.  (AR 42–43, 48, 51.)  On a typical day, Johnson does minor household chores for short periods of time and with the help of her daughter, checks email, sews for 15–20 minutes at a time, goes to doctor appointments, and spends time sitting partially reclined with a heating pad on the back of her neck.  (AR 44–49, 51.)  She exercises for 30 minutes on a treadmill three days a week, resting for a couple of hours afterwards.  (AR 48.)

On January 4, 2013, Administrative Law Judge ("ALJ") Thomas Merrill held a hearing on Johnson's disability application. (AR 38–67.) Johnson appeared and testified, and was represented by counsel. Approximately two weeks later, the ALJ issued a decision finding that Johnson was not disabled under the Social Security Act from her alleged onset date through the date of the decision. (AR 19–30.) Shortly thereafter, the Appeals Council denied Johnson's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–4.) Having exhausted her administrative remedies, Johnson filed the Complaint in this case on August 8, 2013. (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that Johnson had not engaged in substantial gainful activity since her alleged disability onset date of June 30, 2010. (AR 22.) At step two, the ALJ found that Johnson had the following severe impairments: "spondylosis[1] of the cervical and lumbar spine, mild; migraine[;] and hemorrhoids." (*Id.*) Conversely, the ALJ found that Johnson's "other complaints and

---

[1] "Spondylosis" refers to "any lesion of the spine of a degenerative nature." *Stedman's Medical Dictionary* (27th ed. 2000), *available at* Westlaw STEDMANS 382100.

4

diagnoses"—including hypertension, hyperlipidemia[2], osteopenia[3], asthma, ankle impairment, left knee and hip pain, and affective disorder—were nonsevere. (AR 22–24.) At step three, the ALJ determined that none of Johnson's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 24.) Next, the ALJ determined that Johnson had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), "except she can do no rapid repetitive work with her right hand." (AR 25.) Given this RFC, the ALJ found that Johnson was capable of performing her past relevant work as a hospital patient representative and an office manager. (AR 30.) The ALJ also found that Johnson could perform the job of dog breeder as generally performed in the national economy. (*Id.*) The ALJ concluded that Johnson had not been under a disability from the alleged onset date of June 30, 2010, through the date of the decision. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but

---

[2] "Hyperlipidemia" is a synonym for "lipemia," which is defined as, "[t]he presence of an abnormally high concentration of lipids in the circulating blood." *Stedman's Medical Dictionary* (27th ed. 2000), *available at* Westlaw STEDMANS 192350, 229370.

[3] "Osteopenia" is defined as either "[d]ecreased calcification or density of bone," or "[r]educed bone mass due to inadequate osteoid synthesis." *Stedman's Medical Dictionary* (27th ed. 2000), *available at* Westlaw STEDMANS 289180.

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

### I. Opinions of Treating Physician Dr. Terrien

In September 2012, treating physician Dr. Edward Terrien opined in a Medical Source Statement of Ability to Do Work-Related Activities (Physical) that although

6

Johnson could sit for eight hours, she could stand for only three hours and walk for only two hours, in an eight-hour workday.  (AR 1401.)  Dr. Terrien further opined that Johnson could only occasionally use her hands in all activities, including reaching, handling, fingering, feeling, and pushing/pulling.  (AR 1402.)  The ALJ gave only "some limited weight" to Dr. Terrien's opinions, for the sole reason that "[Dr. Terrien] did not explain what medical or other evidence supports his conclusions."  (AR 29.)  Johnson argues that the ALJ applied an incorrect legal standard to Dr. Terrien's opinions, and should have given them more weight.  (Doc. 6-1 at 9–14.)

The treating physician rule states that the opinion of a treating physician such as Dr. Terrien is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993).  Even when a treating physician's opinion is not given controlling weight, the opinion is still entitled to some weight because a treating physician is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ."  20 C.F.R. § 404.1527(c)(2).  When the ALJ decides to afford less than controlling weight to a treating physician's opinion, the ALJ must consider the regulatory factors in determining how much weight is appropriate.  *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw*, 221 F.3d at 134).  These factors include: the length of the treatment relationship, the frequency of examination, the supportability of the opinion, whether the opinion is

7

consistent with the record as a whole, and whether the opinion is given by a specialist about medical issues related to his or her area of specialty. 20 C.F.R. § 404.1527(c). After considering these factors, the ALJ must "give good reasons" for the weight afforded to the treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008). The Second Circuit has consistently held that the failure to provide good reasons for not crediting the opinion of a treating physician is a ground for remand. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

The ALJ did not apply the treating physician rule to Dr. Terrien's opinions, and did not give good reasons for his decision to give those opinions "some limited weight." (AR 29.) Under the treating physician rule, the ALJ should have determined if Dr. Terrien's opinions were supported by objective medical evidence and consistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). Instead, the ALJ considered only that Dr. Terrien "did not explain what medical or other evidence supports his conclusions." (AR 29.) It is true that Dr. Terrien's opinions are bare; he provides no supporting or explanatory statements at all. (AR 1400–05.) It is even unclear if Dr. Terrien's opinions regarding Johnson's walking and standing limitations are based on Johnson's knee, ankle, and/or foot pain; cardiac problems; or other impairments. (AR 1401.) But the Second Circuit has held that a lack of specific clinical findings in a treating physician's report does not, in and of itself, justify an ALJ's failure to credit the physician's opinion. *Schaal*, 134 F.3d at 505. The court stated: "[E]ven if the [treating physician's] clinical findings were inadequate, it was the ALJ's duty to seek

8

additional information from [the treating physician] *sua sponte*." *Id.* (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)); *see also Duncan v. Astrue*, No. 09-CV-4462 (KAM), 2011 WL 1748549, at *20 (E.D.N.Y. May 6, 2011) ("[I]f an ALJ believes that a treating physician's opinion lacks support or is internally inconsistent, he may not discredit the opinion on this basis but must affirmatively seek out clarifying information from the doctor. Moreover, a treating physician's failure to include [proper] support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of this case.") (citation and internal quotation marks omitted).

It cannot be said that the ALJ's error in analyzing Dr. Terrien's opinions was harmless because the medical record supports these opinions, particularly regarding Johnson's walking, standing, reaching, and handling abilities. For example, in a June 2012 treatment note, orthopedist Dr. David Halsey assessed Johnson as having "[l]eft hip arthralgia and left knee arthralgia with paucity of radiographic findings," and recorded: "Arises from a seated position with left hip and left knee pain. On examination of her left hip, [Johnson] has restricted range of motion and guards combined hip flexion, internal rotation with reproduction of her thigh pain." (AR 1475.) In a December 2011 treatment note, physician's assistant Jessica Schwartz recorded that Johnson had "[p]alpable tenderness" in the spine, decreased cervical range of motion, and pain in the shoulders. (AR 413.) Schwartz assessed "chronic, worsening [neck pain] and radiculopathy in a C5 distribution likely due to C4-5 instability." (AR 414.) In February 2012, orthopedic

9

surgeon Dr. Martin Krag noted that cervical spine MRIs from October 2011 showed "moderate broad-based central disk bulging at C5-6 and C6-7, with [slippage at] C4," and that cervical spine x-rays from December 2011 showed "moderate disk degeneration at C5-6 and mild degeneration at C6-7." (AR 404.) Although Dr. Krag stated there was no spinal cord or nerve root impingement to explain Johnson's "fairly diffuse upper limb pain," he felt the pain "could be referred symptoms from the neck," and some or all of the neck symptoms could be "discogenic, at any one or more of the C4-5, C5-6, and C6-7 levels." (*Id.*) As for Johnson's hand tremors, agency consultant Dr. Francis Cook found, based on his review of the record, that Johnson was limited in her ability to do handling and fingering activities with the right hand due to "[i]ntermittent resting tremor." (AR 75–76.) And finally, Johnson's coronary disease, necessitating placement of metal stents (AR 1348), may limit her ability to walk and stand for extended periods. All of this evidence is consistent with and supports Dr. Terrien's opinions regarding Johnson's physical limitations.

The matter must be remanded so the ALJ may follow the treating physician rule in analyzing Dr. Terrien's opinions. *See Schaal*, 134 F.3d at 505 ("[B]ecause we are unsure exactly what legal standard the ALJ applied in weighing [the treating physician's] opinion, because application of the correct standard does not lead inexorably to a single conclusion, and because the Commissioner failed to provide plaintiff with 'good reasons' for the lack of weight attributed to her treating physician's opinion as required by [the] regulations, we conclude that the proper course is to direct that this case be remanded to the SSA to allow the ALJ to reweigh the evidence pursuant to the . . . Regulations,

developing the record as may be needed."). Specifically, the ALJ should determine whether Dr. Terrien's opinions are well supported and consistent with other substantial evidence in the record. If the ALJ cannot ascertain the bases for Dr. Terrien's opinions from the record, Dr. Terrien should be contacted to explain his opinions. *See* SSR 96-5p, 1996 WL 374183, at *6 (1996) ("[I]f the evidence does not support a treating source's opinion . . . and the [ALJ] cannot ascertain the basis of the opinion from the case record, the [ALJ] must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.").[4]

## II.     Remaining Issues

Because remand is required for the ALJ to analyze Dr. Terrien's opinions under the treating physician rule, the Court need not consider the remaining issues raised by Johnson, as they may be affected by the ALJ's new analysis of Dr. Terrien's opinions. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). In the interest of providing guidance on remand, however, the Court makes the following observations regarding Johnson's claims with respect to the ALJ's treatment of her migraine headaches, credibility assessment, and step-four and -five determinations.

---

[4] Johnson asserts in her Motion (Doc. 6-1 at 14–15) that the ALJ erred in rejecting agency consultant Dr. Elizabeth White's opinion that Johnson should "[a]void even moderate exposure" to "[f]umes, odors, dusts, poor ventilation, etc." (AR 91). The Court finds no error. As the ALJ stated in his decision, the record does not support a finding that Johnson's asthma resulted in more than minimal work-related functional limitations. (AR 23.) The ALJ accurately explained: "[Johnson] has been treated with medications that include Flovent and Xopenix [sic] 1 to 4 times per week, with recent improvement in November 2011, and Mucinex for mucus from allergies. The record includes no related hospitalizations or emergency room care and little medical treatment." (*Id.*) The medical record documents Johnson's ongoing complaints regarding her pain issues, blood disorder, and headaches; but does not reflect persistent problems with her asthma.

### A.     Migraine Headaches

Johnson claims the ALJ erred in failing to evaluate the functional limitations resulting from her migraine headaches and failing to account for these limitations in his RFC determination. The ALJ found that Johnson's "migraine[s]" constituted a "severe" impairment (AR 22), and noted Johnson's allegations regarding her migraines in his RFC discussion (AR 25–26). By finding that Johnson's migraines constituted a severe impairment, the ALJ implicitly found that the impairment "significantly limit[ed] [Johnson's] . . . ability to do basic work-related activities." 20 C.F.R. § 404.1521(a). Yet the ALJ's RFC determination—that Johnson could do light work with the exception of rapid repetitive work with her right hand (AR 25)—does not account for the functional limitations arising from Johnson's migraines which are reflected in the record.

In August 2011, Johnson's primary care physician, Dr. Robert Luebbers, recorded that Johnson was having headaches lasting "minutes to hours" two-to-three times each week. (AR 303.) Dr. Luebbers noted that Johnson described the headaches as a sharp pain over her left eye, and involving hand tremors, phonophobia[5], and sometimes nausea. (*Id.*) A few months later, in October 2011, Johnson saw Dr. Michael Hehir, a neurologist, for evaluation of her headaches. (AR 689–91.) Dr. Hehir found that "[Johnson's] symptoms of intermittent throbbing headache with associated blurred vision and occasional garbled speech [are] most consistent with occurrence of her migraine later in life." (AR 690.) Dr. Hehir prescribed Imitrex and ordered an MRI to rule out

---

[5] "Phonophobia" is defined as, "[m]orbid fear of one's own voice, or of any sound." *Stedman's Medical Dictionary* (27th ed. 2000), *available at* Westlaw STEDMANS 313140.

12

structural causes of the headaches.  (AR 690–91.)  A year later, in October 2012, treatment notes from another provider document that Johnson was still having headaches, but they were "getting better" since she had metal stents surgically placed in her heart.  (AR 1441.)  A few months after that appointment, however, Johnson testified at the January 2013 administrative hearing that she was having headaches "a couple of times a week," and "[could not] think straight" when she had them.  (AR 52.)

Given that remand is required to reconsider Dr. Terrien's opinions, the ALJ should also reassess and make findings on how Johnson's headaches impacted her ability to work.  Although the ALJ included a restriction against doing rapid repetitive work with her right hand, and this could possibly account for the hand tremors associated with Johnson's headaches, the ALJ did not make that connection in his decision.  Moreover, the ALJ did not consider the effect that Johnson's alleged difficulty thinking (as a result of her headaches) would have on her ability to work.

### B.   Credibility Assessment

Johnson also finds fault with the ALJ's assessment that her statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible."  (AR 25.)  It is the province of the Commissioner and not the reviewing court to "appraise the credibility of witnesses, including the claimant."  *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).  Thus, if the ALJ's credibility findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.  *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)).  "When evaluating the credibility

13

of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). These reasons "must be grounded in the evidence and articulated in the determination or decision." *Id.*

The activities Johnson was able to perform during the alleged disability period—including walking on a treadmill, managing her own personal care, doing light housework including the laundry, paying bills, shopping for groceries, reading, using a computer, sewing, and knitting for limited periods—are not inconsistent with Dr. Terrien's opinions regarding her limitations. In other words, even assuming Johnson was able to do these activities, she still could be limited in her ability to do work-related functions to the extent opined by Dr. Terrien. The most physically exerting activity Johnson was able to do during the alleged disability period was walking on a treadmill, but she did that for only 30 minutes three days a week. (AR 48.) And she testified that when she completed this activity, she was "usually . . . kind of down and out for a couple of hours afterwards," and "[she] ha[d] to rest before [she could] get moving again."[6] (*Id.*) Regarding Johnson's ability to manage her own personal care, the ALJ neglected to consider her statements in Function Reports that she experienced dizziness in the shower and when bending to put on her socks and shoes; had neck, back, and shoulder pain when she bathed and cared for her hair; and needed to be near a toilet at all times due to her irritable bowel syndrome and bleeding hemorrhoids. (AR 184, 219.) As for Johnson's

---

[6] Also noteworthy, this exercise regimen appears to have been at the advice of her cardiologist "for its cardiac preventive benefits" (AR 1350), given her family history of premature coronary disease and cardiac catheterization with stenting in February 2010 (AR 1348).

ability to use a computer, Johnson testified at the administrative hearing that she did not do much with the computer, "just answer[ing] emails" and writing emails to her son in Afghanistan. (AR 49.) She also stated that it was not comfortable for her to sit in a computer chair for very long. (*Id.*) Regarding her hand-crafting activities, Johnson testified that she is no longer able to cross-stitch or crochet because of her hand tremors and can sew and knit for only 10–15 minutes at a time. (AR 50.)

Taken as a whole, the record does not indicate that Johnson lived an active lifestyle or performed any physically exerting activity on a sustained basis. *See* 20 C.F.R. § 404.1512(a) (in determining whether a claimant is disabled, the Commissioner must consider whether the claimant has the ability to work "on a sustained basis"); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (holding that the ability to perform activities sporadically and for short periods of time, is not a basis upon which to deny disability). On remand, in conjunction with a reevaluation of Dr. Terrien's opinions, the ALJ should also reassess Johnson's credibility, giving consideration to the alleged limitations discussed above.

### C. Past Relevant Work and Step-Five Determination

Finally, Johnson contends that the ALJ erred by extracting only the "sedentary" portion of her medical registration representative/supply clerk job and the "light" portion of her automotive office manager/parts worker job in his finding that Johnson could return to her past relevant work. (Doc. 6-1 at 19–21.) Johnson further asserts that, had the ALJ made a step-five finding, proper application of the facts and evidence, including

Dr. Terrien's opinions, would have resulted in a finding that Johnson was disabled during the relevant period. (*Id.* at 21–22.)

Given the high likelihood that new decisions at earlier steps in the sequential evaluation process may affect the ALJ's RFC determination and other aspects of the decision, the Court does not reach Johnson's step-four and -five claims here. *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.")

## **Conclusion**

For these reasons, the Court GRANTS Johnson's motion (Doc. 6), DENIES the Commissioner's motion (Doc. 12), and REMANDS for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 21st day of May, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge
